The PEOPLE of the State of Colorado, Plaintiff–Appellee and Cross–Appellant,

v.

Claire Christine WELSH, Defendant–Appellant and Cross–Appellee.

No. 04CA2581.

Colorado Court of Appeals,

Div. V.

April 5, 2007.

Rehearing Denied May 24, 2007.

Certiorari Denied Feb. 4, 2008.

John W. Suthers, Attorney General, Elizabeth Rohrbough, Assistant Attorney General, Denver, Colorado; John R. Newsome, District Attorney, Doyle Baker, Deputy District Attorney, Colorado Springs, Colorado, for Plaintiff–Appellee and Cross–Appellant.

Douglas K. Wilson, Colorado State Public Defender, Karen N. Taylor, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant and Cross–Appellee.

Opinion by Judge VOGT.

Defendant, Claire Christine Welsh, appeals the judgment of conviction entered on a jury verdict finding her guilty of first degree mur-

der. The People cross-appeal, challenging two rulings made by the trial court. We affirm the judgment, dismiss the cross-appeal as to one ruling, and approve the second ruling.

Defendant shot and killed her boyfriend after he attempted to end their relationship. She was charged with first degree murder and pled not guilty by reason of insanity. Her conviction was reversed on appeal. *People v. Welsh*, 58 P.3d 1065 (Colo.App.2002), *aff'd*, 80 P.3d 296 (Colo.2003). On retrial, the jury again rejected defendant's insanity defense and found her guilty of first degree murder.

## I. APPEAL

We conclude that defendant's contentions of error regarding jury instructions, prosecutorial misconduct, expert testimony, and hearsay evidence, whether considered singly or cumulatively, do not warrant reversal.

### A.

Defendant raises two claims of error in regard to the trial court's jury instructions. We find no grounds for reversal.

 A trial court has the duty to instruct the jury correctly on the law applicable to the case. *People v. Stewart*, 55 P.3d 107, 120 (Colo.2002). However, the form of the instructions is within that court's sound discretion. *People v. Coria*, 937 P.2d 386, 392 (Colo.1997). Jury instructions framed in the language of the statute are generally sufficient. *People v. O'Connell*, 134 P.3d 460, 465 (Colo.App.2005).

### 1.

Defendant contends the instruction on the affirmative defense of insanity unconstitutionally shifted to her the burden of proving sanity. Specifically, she asserts the instruction failed to include language conveying the notion that the court had to decide as a threshold matter whether there was some credible evidence to support the insanity defense, and that, if the court found that that threshold showing had been met, there was no further reason to inform the jury of the presumption of sanity. We are not persuaded.

 Because defendant did not object to the insanity instruction at trial, we may reverse only for plain error. In the context of jury instructions, plain error must be "both obvious and substantial." It will be found only if the defendant shows that the instruction affected a substantial right and that there is a reasonable possibility that the error contributed to the conviction. Failure to instruct the jury properly does not constitute plain error if the relevant instruction, read in conjunction with other instructions, adequately informs the jury of the law. *People v. Miller*, 113 P.3d 743, 750 (Colo.2005).

Section 16–8–105.5(2), C.R.S.2006, states, in relevant part: "Every person is presumed to be sane; but, once any evidence of insanity is introduced, the people have the burden of proving sanity beyond a reasonable doubt."

Here, the jury was instructed that:
The evidence presented in this case has raised the affirmative defense of insanity. The law presumes everyone to be sane. However, after some evidence of insanity is introduced, the burden of proof is upon the prosecution to prove to the satisfaction of the jury beyond a reasonable doubt that the defendant was sane at the time of the commission of the crime(s) charged.

The instruction is based on the pattern instruction found at CJI–Crim. 3:04–A (1983), and it tracks the language of § 16–8–105.5(2).

 We acknowledge that, as defendant argues, there would appear to be little if any reason to inform the jury of the presumption of sanity where, as here, the defendant has effectively overcome the presumption by presenting evidence of insanity sufficient to allow the issue to go to the jury. However, the question presented here is whether giving an instruction including the "presumption" language was plain error. We conclude that it was not.

First, at the time of trial, it would not have been "obvious" to the trial court that giving this pattern instruction was error. *See People v. Miller, supra*, 113 P.3d at 750. On the contrary, divisions of this court had previous-

ly concluded that the instruction given here did not impermissibly shift the burden of proof on the insanity defense. *See People v. Farrell,* 10 P.3d 672, 678–79 (Colo.App.2000), *rev'd on other grounds,* 34 P.3d 401 (Colo. 2001); *People v. Bielecki,* 964 P.2d 598, 606 (Colo.App.1998).

Further, the jury was repeatedly instructed regarding the prosecution's burden of proof. In the instruction at issue here, the jury was told that "the burden of proof is upon the prosecution to prove to the satisfaction of the jury beyond a reasonable doubt that the defendant was without the affirmative defense of insanity as to the crime charged, as well as to all the other elements of the crime charged in count one." Particularly in light of the court's additional instructions, which the jury is presumed to have followed, *see People v. Bielecki, supra,* 964 P.2d at 606, giving the challenged insanity instruction did not constitute plain error. *See People v. Miller, supra.*

 Nor did plain error result from the prosecutor's reference to the instruction in closing argument ("You have the instruction which says the law presumes everyone to be sane until there's evidence ... otherwise. So the fact that she has a mental illness is not enough, ladies and gentlemen. It's not enough."). A prosecutor is entitled to comment in closing on the instructions to be given to the jury. *See People v. Perea,* 126 P.3d 241, 247 (Colo.App.2005). The prosecutor's statement that defendant's mental illness was "not enough" under the instruction was an incorrect statement of the law to the extent it implied that insanity was not a defense or that the jury could not find defendant insane. However, the comment, to which there was no objection, did not itself amount to plain error or render the jury instruction plainly erroneous.

## 2.

 Defendant tendered the following instruction:

Even if you determine that Ms. Welsh was not insane at the time of the commission of any of the offenses charged, you may consider all of the evidence presented concerning her mental condition and ca-

pacity in assessing whether she acted "after deliberation," "intentionally," or "knowingly" at that time. The burden is always on the prosecution to prove each element of each charge beyond a reasonable doubt.

If you find that, based on all the evidence presented concerning her mental state and condition ... Ms. Welsh did not, or was unable to, act intentionally or after deliberation, then you must find her not guilty of the charges containing that element. Likewise if you find that, based upon all the evidence presented concerning her mental state and condition ... Ms. Welsh did not, or was unable to, act knowingly, you must find her not guilty of the charges containing that element.

The trial court declined to give the instruction, finding it duplicative of other instructions. We agree with the trial court.

 A trial court is not required to give an instruction that is encompassed in the court's other instructions. *People v. Darbe,* 62 P.3d 1006, 1010 (Colo.App.2002); *see People v. Vanrees,* 125 P.3d 403, 409–10 (Colo. 2005) (recognizing right of defendant to contest whether he formed culpable mental state of charged crime, and concluding that court's instructions, read as a whole—especially, instruction telling jury it could consider "any evidence" bearing on element of "knowingly"—adequately informed jury that it could consider evidence of defendant's mental slowness in determining whether he acted knowingly).

Here, the court's instructions informed the jury of the presumption of innocence and the prosecution's burden of proving every element of the charged offenses beyond a reasonable doubt. The jury was also instructed regarding the applicable mental states for the charged offenses, and it was told that the "culpable mental state is as much an element of the crime as the act itself and must be proven beyond a reasonable doubt, either by direct or circumstantial evidence." The elemental instructions told the jurors that they had to consider "all the evidence" in determining whether the prosecution had proved the elements of the crime beyond a reasonable doubt. Finally, instruction number 21

advised the jurors of the defense position that defendant never intended to kill the victim and that her mind was "so defective at the time of [the victim's] death that she could not deliberate and could not have formed the necessary intent" to kill him.

These instructions, taken together, sufficiently informed the jury of the substance of defendant's tendered but refused instruction.

### B.

Defendant contends that reversal is required based on numerous instances of asserted prosecutorial misconduct, primarily during closing argument. We disagree.

 Claims of improper argument must be evaluated in the context of the argument as a whole and in light of the evidence before the jury. A prosecutor may comment on the evidence admitted at trial, the reasonable inferences that can be drawn from the evidence, and the instructions given to the jury. He or she may also point to circumstances that raise questions about, or cast doubt on, a witness's testimony, and may draw reasonable inferences from the evidence as to the credibility of witnesses. However, a prosecutor may not denigrate defense counsel, express a personal opinion as to the credibility of witnesses or the guilt of the defendant, misstate the evidence, or engage in argument calculated to appeal to prejudices or mislead the jury. *See Domingo–Gomez v. People*, 125 P.3d 1043, 1048–49 (Colo.2005); *People v. Perea, supra*, 126 P.3d at 247.

 Whether closing argument is improper is a determination committed to the discretion of the trial court. *People v. Perea, supra*. When no contemporaneous objection was made to the prosecutor's statements, we reverse only for plain error that is, error—that so undermines the fundamental fairness of the trial as to cast serious doubt on the reliability of the jury's verdict. This standard is not met unless the asserted misconduct is "flagrantly, glaringly, or tremendously improper." *Domingo–Gomez v. People, supra*, 125 P.3d at 1053.

We conclude that the following remarks of which defendant complains were not improper:

 (1) The prosecutor's reference to instruction number 21 as the "theory of defense instruction." While trial courts are to refrain from distinguishing between the "court's instructions" and the "defendant's instruction," *see People v. Coria, supra*, 937 P.2d at 392–93, it is not misconduct for a prosecutor to refer to the fact that an instruction setting forth the defense theory is argument, not a statement of law, and that the jury need not follow it. *See People v. Isom*, 140 P.3d 100, 105–06 (Colo.App.2005); *People v. Jones*, 990 P.2d 1098, 1108 (Colo. App.1999).

 (2) The prosecutor's comment on the absence of a suicide note. The comment was a permissible reference to the absence of evidence to support defendant's contention that she was intending to kill herself. *See Domingo–Gomez v. People, supra.*

Other statements of which defendant complains—namely, those assertedly denigrating her insanity defense and arguing that defendant was "trying to blow smoke at" the jury—were arguably within the prosecutor's leeway to point to evidence and inferences that cast doubt on the defense theory or show that evidence on which defendant was relying lacked substance. *See People v. Petschow*, 119 P.3d 495, 508 (Colo.App.2004); *People v. Ramirez*, 997 P.2d 1200, 1211 (Colo. App.1999), *aff'd*, 43 P.3d 611 (Colo.2001); *see also People v. Ziglar*, 45 P.3d 1266, 1269 (Colo.2002) (defendant who takes the stand is subject to same credibility challenges as any other witness).

 To the extent any of the comments went beyond arguments based on the evidence and were instead intended to denigrate defense counsel or suggest that counsel did not believe in the defense case, they were improper. However, they did not give rise to plain error. *See People v. Coria, supra*, 937 P.2d at 391; *People v. Hogan*, 114 P.3d 42, 56 (Colo.App.2004); *cf. People v. Scheidt*, 186 Colo. 142, 145, 526 P.2d 300, 302 (1974) (prosecutor's improper comments and questions, made over defense counsel's objection, de-

nied defendant a fair trial and required reversal); *People v. Jones,* 832 P.2d 1036, 1038–40 (Colo.App.1991) (prosecutor's numerous "ill-advised and improper" comments deprived defendant of fair trial and required reversal). We similarly conclude that the prosecutor's two brief references to defendant's having taken the victim from "us," even if improper, did not rise to the level of argument calculated to inflame the passions of the jury. *See Domingo–Gomez v. People, supra.*

■ We agree with defendant that the prosecutor's reference to her as an "obsessive liar" was improper. However, this single comment, whether considered alone or together with the other potentially objectionable statements of which defendant complains, did not so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the jury's verdict. Thus, there was no plain error. *See Domingo–Gomez v. People, supra,* 125 P.3d at 1053 (disapproving of prosecutor's statement that defendant had "lied," and of other remarks by the prosecution, but finding no plain error); *People v. Al–Yousif,* —— P.3d ——, 2006 WL 3824897 (Colo.App. No. 04CA0320, Sept. 7, 2006) (prosecutor's statement that defendant lied about using fake driver's license was improper, but that comment and additional improper statement did not result in plain error); *cf. Wilson v. People,* 743 P.2d 415, 421 (Colo.1987) ("Considering the prosecutor's remarks in the context of the entire record, including the flagrancy and frequency of the improper statements and the obvious significance of those statements to the ultimate verdict, we are satisfied that the prosecutor's repeated expressions of his personal opinion about the credibility of the defendant and his wife so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction.").

### C.

Nor is defendant entitled to reversal based on the prosecutor's suggestion to the jury, during cross-examination and in closing, that the jury should reject testimony by a court-appointed psychiatric expert.

Over the prosecutor's objection, a psychiatrist retained by the court to evaluate defendant's sanity was allowed to opine that, at the time she killed the victim, defendant was incapable of deliberating and did not deliberate. As discussed in part II, below, addressing the People's cross-appeal, we conclude that the trial court did not err in allowing the testimony. However, for purposes of defendant's appeal, we further conclude that the prosecutor's cross-examination of the psychiatrist and his reference to the issue in closing argument were not improper.

■ The fact that the trial court allowed the psychiatrist to state his opinion did not preclude the prosecutor from cross-examining him regarding that opinion. *See People v. Shreck,* 22 P.3d 68, 78 (Colo.2001) (noting that vigorous cross-examination mitigates concerns about liberal allowance of expert testimony). Thus, the prosecutor could cross-examine the psychiatrist about his ability to render such an opinion and about whether it was generally accepted as proper in the community of forensic psychiatrists to opine as to whether "someone did in fact deliberate, as to whether or not someone in fact intended to kill."

■ The prosecution called, as a rebuttal expert, a psychiatrist who had evaluated defendant before her first trial. That psychiatrist testified that forensic psychiatrists do not have particular expertise in assessing whether an individual had the capacity to form an intent on a particular occasion, and that whether defendant actually had the requisite culpable mental state was an issue for the fact finder. The prosecutor could properly rely on the rebuttal expert's testimony in urging the jury, in closing argument, to reject the psychiatric opinion elicited by the defense. *See Domingo–Gomez v. People, supra,* 125 P.3d at 1048.

### D.

Defendant contends the trial court abused its discretion in allowing hearsay testimony regarding the victim's desire, and efforts, to end his relationship with her. We disagree.

A trial court's evidentiary rulings are reviewed for abuse of discretion. An evidentiary ruling will constitute an abuse of discretion only if it is manifestly arbitrary, unreasonable, or unfair. *People v. Stewart, supra*, 55 P.3d at 122.

Several witnesses testified for the prosecution regarding the relationship between defendant and the victim, including recounting the victim's statements that he wanted to end the relationship, had asked defendant to move out, and was taking actions to extricate himself from the relationship. Defendant objected on hearsay grounds to the prosecutor's first three efforts to elicit such testimony, but the trial court overruled her objections, and defendant thereafter did not challenge similar testimony from other witnesses. We conclude that, except as noted below, defendant's initial objections sufficiently preserved her hearsay objection to all the testimony. *See* CRE 103(a)(2). However, under the standard set forth above, we find no abuse of discretion.

Hearsay is "a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." CRE 801(c). If an out-of-court statement is not offered for its truth, it is admissible as nonhearsay evidence as long as it is relevant. *See* CRE 402; *People v. Scearce*, 87 P.3d 228, 233 (Colo.App.2003); *see also People v. Huckleberry*, 768 P.2d 1235, 1242 (Colo.1989)(statements to which defendant objected were not admitted for purpose of establishing their truth, and trial court therefore did not err in admitting them as relevant nonhearsay evidence); *People v. Hoover*, 165 P.3d 784, 790 (Colo.App. 2006)("Where a statement is offered, not to prove the truth of the matter asserted, but for some other reason, such as to show defendant's state of mind, it is admissible as nonhearsay."); *People v. Mossmann*, 17 P.3d 165, 168 (Colo.App.2000) (trial court should have admitted, as nonhearsay, testimony that evidenced defendant's state of mind and substantiated his affirmative defense).

If a statement is hearsay, it is inadmissible unless it falls within an exception to the hearsay rule. CRE 802. One such excep-

tion, relevant here, is set forth in CRE 803(3), which states that the hearsay rule does not exclude

> [a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

Thus, under CRE 402 and 803(3), the hearsay statement of a victim is admissible if the victim's state of mind is relevant to a disputed issue in the case. *See People v. Cardenas*, 25 P.3d 1258, 1263 (Colo.App. 2000); *People v. Evans*, 987 P.2d 845, 851 (Colo.App.1998), *overruled in part on other grounds by People v. Lefebre*, 5 P.3d 295 (Colo.2000). Conversely, a crime victim's hearsay statements are not admissible, even if they arguably show the victim's "state of mind," if the victim's state of mind is irrelevant. *See People v. Madson*, 638 P.2d 18, 28–31 (Colo.1981); *People v. Saiz*, 923 P.2d 197, 201 (Colo.App.1995).

Here, evidence that the victim wanted to end his relationship with defendant was relevant to show that defendant had a motive for killing the victim and to rebut her testimony that she had not intended to kill him. *See People v. Madson, supra*, 638 P.2d at 29 (noting that victim's state of mind can be relevant to rebut defendant's claim of accidental death). Thus, under the authorities set forth above, regardless of whether evidence of the victim's state of mind is deemed hearsay admissible under CRE 803(3) or nonhearsay, the trial court did not abuse its discretion in admitting the evidence.

We decline to reverse based on defendant's argument, made for the first time on appeal, that some of the statements were inadmissible under CRE 803(3) because they were statements of "memory of a past set of occurrences," *see People v. Carlson*, 712 P.2d 1018, 1022 n. 4 (Colo.1986), or because they were impermissibly prejudicial. Any error in admission of the testimony on these grounds did not so undermine the fundamental fair-

ness of the trial as to cast doubt on the reliability of defendant's conviction, and thus did not constitute plain error. *See* CRE 103(a)(1); *People v. Renfro,* 117 P.3d 43, 48 (Colo.App.2004); *People v. Fisher,* 9 P.3d 1189, 1192 (Colo.App.2000).

#### E.

Although we have identified certain errors, we conclude that those errors, even considered cumulatively, did not substantially prejudice defendant's right to a fair trial. Therefore, she is not entitled to reversal on a theory of cumulative error. *See People v. Roy,* 723 P.2d 1345, 1349 (Colo.1986); *People v. Knight,* 167 P.3d 147, 157 (Colo.App. 2006).

### II. CROSS–APPEAL

The People cross-appeal under § 16–12–102(1), C.R.S.2006, challenging two evidentiary rulings made by the trial court. We dismiss the cross-appeal as to the first ruling, and we approve the second ruling.

 Section 16–12–102(1) permits the prosecution to appeal "any decision of a court in a criminal case upon any question of law." "Any prosecutorial appeal under [§ ]16–12–102(1) is necessarily limited to questions of law only. This section does not give the People a basis upon which to challenge the trial court's assessment of the evidence." *People v. Martinez,* 22 P.3d 915, 919 (Colo. 2001) (citations omitted) (dismissing appeal by People that implicated, not purely legal questions, but factual questions whose resolution fell within discretion of trial court); *see also People v. Dunlap,* 975 P.2d 723, 763 n. 51 (Colo.1999) (declining to address issues raised on cross-appeal after affirming defendant's conviction and sentence, where issues were fact specific and People were not prejudiced by alleged errors). However, if the issue on appeal is authorized by the statute, we may not dismiss the appeal as without precedential value. C.A.R. 4(b)(2); *see People v. Victorian,* 165 P.3d 890 (Colo.App. 2007) (disapproving of prosecution's appeal that would have no practical consequences for parties, but concluding that written opinion was required under § 16–12–102(1) and C.A.R. 4(b)(2)).

#### A.

 In their cross-appeal briefs, the People contended that the trial court "erred as a matter of law" in excluding a tape of a 911 call, which they asserted was "nontestimonial and admissible under the excited utterance exception" to the hearsay rule. After oral argument, the People moved to withdraw this issue, but did not state any grounds for their motion.

We have concluded that the cross-appeal as to this contention should be dismissed for reasons that were raised by defendant in her answer brief but characterized by the People as "without merit" in their reply brief. In these circumstances, we elect to deny the motion to withdraw in order to explain the grounds for our conclusion.

 As set forth above, evidentiary rulings are matters committed to a trial court's discretion. Such rulings may nevertheless be appealable under § 16–12–102(1) if the trial court made its ruling based on an assertedly erroneous interpretation of the law. *See, e.g., People v. MacLeod,* 155 P.3d 494 (Colo.App.2006) (addressing People's appeal of ruling admitting evidence based on trial court's application of case law interpreting rape shield statute) (*cert. granted* Mar. 26, 2007, 2007 WL 882864). Thus, if the trial court here had in fact ruled that the 911 call was "testimonial" under the applicable case law, or that it did not constitute an "excited utterance" under CRE 803(2) and cases construing that term, its ruling might have been reviewable under § 16–12–102(1).

However, the trial court did not decide whether the tape was testimonial. Nor did it disagree with the prosecutor's position that the statement was an excited utterance. Rather, the court excluded the tape as a cautionary measure out of concern that its admission might violate defendant's confrontation rights under *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), announced a few months before the trial. In so ruling, the court noted that it had sought guidance from the Colorado Su-

preme Court on the issue of "what is testimonial and what is not," but had found no such guidance.

Cases announced after defendant's trial have clarified when statements made during a 911 call are testimonial. *See Davis v. Washington,* 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006); *People v. Cevallos–Acosta,* 140 P.3d 116 (Colo.App.2005); *People v. King,* 121 P.3d 234 (Colo.App.2005). However, as the People recognize, the trial court did not have the benefit of those cases at the time it made its ruling.

■ Moreover, as recent case law makes clear, whether a 911 call is testimonial must be decided on a case-by-case basis, considering, for example, whether the call was made for the purpose of getting help or to provide information for investigative purposes. *See People v. Cevallos–Acosta, supra,* 140 P.3d at 128. On appeal, however, the People make only conclusory statements regarding this inquiry, without specific citation to the record, beyond a reference to the tape itself, to support their statements. Finally, although it is not dispositive of the reviewability of the issue under § 16–12–102(1), we note that the People do not even allege how, if at all, they were prejudiced by the trial court's exclusion of the tape.

In these circumstances, we decline to disapprove the trial court's ruling, and, instead, dismiss the cross-appeal as to this contention.

### B.

■ The People also challenge the trial court's ruling allowing defendant to "present evidence derived from a court-ordered sanity examination for purposes unrelated to the issue of her sanity." Although this contention likewise relates to an evidentiary ruling, the trial court admitted the evidence after hearing extensive argument regarding the controlling legal standard and based on its view that the evidence was admissible under that standard. Thus, we conclude that the ruling raises a question of law reviewable on appeal by the People. We approve the ruling.

■ As the trial court recognized, a criminal defendant has a constitutional due process right to present relevant evidence to contest whether he or she factually possessed the culpable mental state of the crime charged, and that right exists even if the defendant is determined to be neither insane nor mentally impaired. *People v. Vanrees, supra,* 125 P.3d at 409 ("An accused may contest or counter factually the required mental state even though he may possess the capacity to form it."); *see also Hendershott v. People,* 653 P.2d 385 (Colo.1982).

■ At trial, the prosecution argued that the psychiatrist who had been retained to evaluate defendant's sanity was precluded under § 16–8–107(1)(a), C.R.S.2006, and case law, including *People v. Herrera,* 87 P.3d 240 (Colo.App.2003), from testifying that defendant did not have the capacity to deliberate at the time she killed the victim. The prosecutor also argued that such testimony was improper because it went to an ultimate issue for the jury to decide. The trial court disagreed, and, relying on *People v. Vanrees, supra,* ruled that defendant had a due process right to offer the psychiatrist's testimony. The court did not err in so ruling.

Section 16–8–107(1)(a) states:

Except as provided in this subsection (1), no evidence acquired directly or indirectly for the first time from a communication derived from the defendant's mental processes during the course of a court-ordered examination ... is admissible *against the defendant* on the issues raised by a plea of not guilty, if the defendant is put to trial on those issues, except to rebut evidence of his or her mental condition introduced by the defendant to show incapacity to form a culpable mental state....

(Emphasis supplied.)

In *People v. Herrera, supra,* a division of this court held that the trial court committed reversible error in allowing the psychiatrist who had evaluated the defendant's sanity to testify that he thought the defendant in fact deliberated and in fact intended to kill his father. However, in *Herrera,* the testimony was offered against the defendant. Thus, it fell squarely within the proscription against admission of such evidence in § 16–8–107(1)(a). Neither *Herrera* nor § 16–8–

107(1)(a) precluded defendant from offering the testimony at issue here.

■ The People contend on appeal that admission of the testimony also violated § 16–8–107(1.5)(a), C.R.S.2006, which provides certain limitations on the admission of evidence derived from a defendant's court-ordered sanity examination. However, the People did not raise this statute in the trial court and therefore have not preserved the issue for appeal. *See* CRE 103(a)(1). Further, even if the People were deemed to have raised the issue because § 16–8–107(1.5)(a) is addressed in *Herrera,* which they cited in the trial court, we perceive no basis for concluding that this subsection of § 16–8–107 may be interpreted to prevent a defendant from exercising her due process right to contest whether she possessed the culpable mental state required for the charged offense. *See People v. Vanrees, supra.*

We further conclude that the ruling was not erroneous on the basis that it allowed an opinion on an ultimate issue of fact. *See* CRE 704; *People v. Prendergast,* 87 P.3d 175, 181 (Colo.App.2003) (opinion testimony that is otherwise admissible is not objectionable because it embraces an ultimate issue of fact).

Thus, the trial court did not err in admitting the psychiatrist's testimony.

### III.

The judgment of conviction is affirmed. The cross-appeal is dismissed as to the ruling on the 911 call evidence, and the trial court's ruling on the sanity examination evidence is approved.

Judge CARPARELLI and Judge JONES concur.